IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANGELA C. MCGLOTHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV998 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Angela McGlothlin ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on May 28, 2013, alleging a disability onset date of January 2, 2013. (Tr. at 10, 153-60.)[1] Her claim was denied initially (Tr. at 77-90, 107-10), and that determination was upheld on reconsideration (Tr. at 91-106, 115-22). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 123-24.) Plaintiff attended the subsequent video hearing on

---

[1] Transcript citations refer to the Administrative Record [Doc. #9].

August 15, 2016, along with her attorney and an impartial vocational expert. (Tr. at 10.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 24) and, on September 5, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since January 2, 2013, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

1) obesity; 2) hypertension; 3) left knee degenerative joint disease; 4) migraines; 5) a mental impairment variously diagnosed as bipolar disorder, post-traumatic stress disorder, and an unspecified personality disorder.

(Tr. at 12.) The ALJ found at step three that none of these impairments, either individually or in combination, met or equaled any disability listing. (Tr. at 13-16.) In assessing whether Plaintiff's mental impairments met or equaled a listing, the ALJ found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence or pace, but concluded that Plaintiff's mental

5

impairments did not meet or equal a listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with frequent postural activities. The ALJ also included the following, additional mental restrictions:

> [Plaintiff] would be limited to no greater than unskilled work tasks that would be consistent with an SVP of 1 to 2 but no greater than 2. She could have no greater than occasional interaction with coworkers, supervisors, and/or members of the general public.

(Tr. at 16.) Based on the above RFC and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff was unable to return to her past relevant work as private home cleaner. (Tr. at 22.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 22-23.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 23-24.)

Plaintiff now contends that the ALJ's RFC assessment failed to properly account for her limitations in concentration, persistence, or pace as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). She also contends that, at step five, the ALJ failed to obtain a reasonable explanation for an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). After careful consideration, the Court finds that Plaintiff's first contention merits remand.

A. Mental RFC Determination

At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit explained that where such limitations are reflected at step three, the ALJ should address those limitations

6

in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently

7

accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In the present case, as noted above, the ALJ found at step three of the sequential analysis that Plaintiff had "moderate difficulties" with regard to concentration, persistence, or pace. Specifically, the ALJ found that:

> With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties. She testified she cannot focus on an entire television show because her mind goes to something else. She indicated she does not finish what she starts and must ask for spoken instructions to be repeated. The consultative examiner reported [Plaintiff] had a "seemingly impaired memory" and assessed a limitation to only repetitive, simple tasks. This finding is supported by the overall evidence of record and is consistent with the State agency opinions.

(Tr. at 15.) In discussing the evidence, the ALJ also noted the Plaintiff initially alleged disability based on, *inter alia*, the fact that she found it "hard to remember and focus on a lot of things." (Tr. at 17.) The ALJ again noted Plaintiff's testimony that she does not finish what she starts, that she must ask for spoken instructions to be repeated, that she cannot focus on an entire television show because her mind goes to something else, and that her "medications do not really help with mental functioning." (Tr. at 17-18, 20.) The ALJ also noted that Plaintiff's husband reported that Plaintiff "sometimes finishes what she starts, sometimes follows written instructions, but needs to have spoken instructions repeated." (Tr. at 18.) With respect to the medical evidence, that ALJ noted that the consultative examiner diagnosed Plaintiff with "post-traumatic stress disorder and a personality disorder, not otherwise specified, with borderline features," and the ALJ further noted that this diagnoses was also reflected in the medical records from Daymark Recovery Services. (Tr. at 19-20.) These medical records

reflect that throughout the relevant time period, Plaintiff reported "difficulties with focusing her attention" (Tr. at 517), "difficulty focusing" (Tr. at 523), and that "she has a hard time maintaining attention and concentration on a task." (Tr. at 535).

In analyzing the evidence, the ALJ noted that Plaintiff's medical records reflected that Plaintiff "had logical, coherent, and goal-directed thoughts with no evidence of delusions," and she was described as having a normal mood and affect. (Tr. at 20.) The ALJ noted that the records reflected that Plaintiff's mood was described as anxious or depressed, but "this was apparently based on her reported mood, rather than the provider's assessment" and "her affect in the same records was frequently described as broad ranged and/or appropriate." (Tr. at 20.) The ALJ then concluded as follows:

> While [Plaintiff] has multiple mental health diagnoses, the objective findings in the record indicate she functions reasonably well without significant limitations from these diagnoses. [Plaintiff's] mental impairment is reflected in the above residual functional capacity's limitation to unskilled work tasks and no greater than occasional interaction with coworkers, supervisors, and/or members of the general public.

(Tr. at 20.) However, there is no analysis of how the limitation to unskilled work addresses the limitations that the ALJ had previously recognized, particularly the moderate difficulties with concentration, persistence or pace found by the ALJ at step three. As specifically set out in Mascio, a limitation to unskilled work does not necessarily account for a claimant's limitations in concentration, persistence, and pace. Mascio, 780 F.3d at 638. In addition, it is unclear how the fact that Plaintiff did not have delusions and had an appropriate or broad ranged affect meant that Plaintiff could perform the full range of unskilled work, despite the moderate difficulties in concentration, persistence or pace found by the ALJ at step three. Having made the determination that Plaintiff had moderate difficulties with regard to

concentration, persistence, and pace, the ALJ was required under Mascio to either (1) address Plaintiff's limited ability to stay on task when assessing her RFC or (2) explain why such limitations do not affect Plaintiff's ability to work. Here, the ALJ's analysis fails to specifically address the previously-determined moderate difficulties and concentration, persistence, and pace, and in the circumstances fails to build a "logical bridge" to support the ALJ's determination.

Moreover, the ALJ's analysis is further complicated by the discussion of the weight given to the opinion evidence. Specifically, the ALJ gave great weight to the opinions of the State agency psychological consultants, both of whom found that Plaintiff could perform simple, routine, repetitive tasks in a low-stress environment, despite her moderate limitation in concentration, persistence, or pace. (Tr. at 20-21, 82, 87, 98, 103.) In some cases, this Court has concluded that reliance on the analysis of State agency psychologists can provide a sufficient basis for the ALJ's RFC determination to satisfy Mascio. See Plazas v. Berryhill, No. 1:17CV675, 2018 WL 4017607 (M.D.N.C. Aug. 22, 2018) ("Previously, this Court has held that an ALJ may account for her omission of limitations specifically addressing a plaintiff's ability to stay on task through proper reliance on medical opinion evidence." (collecting cases.)). However, in the present case, the State agency psychologists found that Plaintiff could perform simple, routine, repetitive tasks in a low-stress environment, but the RFC did not include a limitation to simple, routine, repetitive tasks in a low-stress setting, and instead simply limited Plaintiff to "unskilled" tasks. It is possible that the ALJ may have intended to equate the "unskilled" work set out in the RFC with the limitation to "simple, routine, repetitive tasks" set forth by the State agency consultants. However, this Court has specifically

held that simple, routine work is not synonymous with unskilled work. See, e.g., Boler v. Colvin, No. 1:10CV451, 2013 WL 5423647 (M.D.N.C. Sept. 26, 2013) (Eagles, J.). In Boler, the Court noted that:

> "Unskilled work" constitutes a term of art, defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The SSA's policy statements further provide that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15. From this definition, it is clear that "simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work" in general. McClendon v. Astrue, No. 1:10CV411, 2012 WL 13525, at *7 (M.D.N.C. Jan. 4, 2012) (unpublished). Accordingly, whether or not unskilled work squares with a claimant's particular mental limitations presents a fact-specific determination. See Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir.1984) (citing Cummins v. Schweiker, 670 F.2d 81, 84 (7th Cir.1982)).

Id. at *4; see also McClendon v. Astrue, No. 1:10CV411, 2012 WL 13525 (M.D.N.C. Jan. 4, 2012); Hayes v. Colvin, No. 1:10CV379, 2013 WL 2456111, *7 (M.D.N.C. June 6, 2013); Straughn v. Colvin, No. 1:14CV200, 2015 WL 4414275 (M.D.N.C. July 20, 2015); Walls v. Astrue, No. 1:11CV318, 2013 WL 954361, at *4 (W.D.N.C. Feb. 22, 2013) (unpublished) adopted in 2013 WL 951583, at *1 (W.D.N.C. Mar. 12, 2013) (unpublished); Powell v. Astrue, No. 6:09–cv–0900–JFK–WMC, 2010 WL 3168308, at *16 (D.S.C. May 4, 2010) (unpublished) adopted in 2010 WL 3168310, at *3–4 (D.S.C. Aug. 10, 2010) (unpublished); Teeter v. Astrue, No. 3:12–CV–190–GCM, 2012 WL 5405531, at *2-3 (W.D.N.C. Nov. 6, 2012) (unpublished); Vuxta v. Comm'r of Soc. Sec., 194 Fed. App'x 874, 878 (11th Cir. 2006); Frye v. Astrue, No. 1:11–CV–1019, 2012 WL 1831548, at *23 (N.D. Ohio Apr. 9, 2012) (unpublished) ("This Court agrees that the set of jobs that comprise the category of 'unskilled' jobs are not identical

to the set of jobs that comprise the category of 'simple, routine' jobs and that not every job that is 'unskilled' is also 'simple, routine and repetitive.'") adopted in 2012 WL 1831537, at *1 (N.D. Ohio May 18, 2012) (unpublished)); Lyles v. Colvin, 2015 WL 1931398, at *16 (D.S.C. Apr. 28, 2015).

In addition, in the present case, even if the ALJ intended to equate the "unskilled" work set out in the RFC with the limitation to "simple, routine, repetitive tasks," the ALJ still did not address at all the State agency physicians' further limitation to a "low stress setting." Thus, the ALJ's RFC determination and hypothetical question limiting Plaintiff to "unskilled" work did not fully reflect the limitation to simple, routine, repetitive tasks in a low stress setting as set out in the State Agency opinions that were given great weight. Cf. Walls v. Astrue, 2013 WL 954361 (W.D.N.C. Feb. 22, 2013) ("Moreover, it is not even clear from the decision whether the ALJ limited Plaintiff to simple, routine, repetitive, tasks because the specific findings for the ALJ are silent as to such limitations. . . . Although the ALJ seemed to equate the two as equal in his discussion of Plaintiff's RFC, as other Courts in this Circuit have explained, 'simple, routine, repetitive work is a narrower category (meaning greater limitations) tha[n] unskilled work.' . . . It is not clear from the decision whether the ALJ intended to limit Plaintiff only to unskilled work as stated in his RFC finding, or whether the ALJ intended to restrict Plaintiff to a more specific subset of unskilled work, i.e. unskilled work limited to performing simple, routine, repetitive tasks. . . . Upon a review of the evidence in the record and the decision of the ALJ, the Court finds that the ALJ's mental RFC determination is not supported by substantial evidence in the record and remand is required." (internal citations omitted)). Therefore, in the present case, the ALJ's reliance on the State agency opinions does

not support or explain the RFC limitation to "unskilled" work, and as in <u>Mascio</u>, these "other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636.[4]

Finally, the Court notes that it may well be that even if Plaintiff's moderate limitations in concentration, persistence and pace are fully reflected in the RFC, Plaintiff would still be able to perform other work, and the Court has considered this issue, particularly with respect to whether remand is actually necessary in this case. However, it is beyond the scope of this Court's review to determine what limitations would have been included in the RFC, or were intended to be included in the RFC, in order to address Plaintiff's difficulties in concentration, focus, and pace, let alone to then attempt to determine whether jobs exist in the national economy that would still be consistent with those limitations and the remainder of the RFC. That determination must be made by the ALJ in the first instance, taking into account all of the relevant evidence. Having reached this determination as to Plaintiff's first contention, the Court need not reach the remaining contentions.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner

---

[4] The Court also notes that the RFC specifically provides that Plaintiff is capable of "no greater than unskilled work tasks that would be consistent with an SVP of 1 to 2 but no greater than 2." (Tr. at 16.) However, the RFC limitation to work "consistent with an SVP of 1 to 2 but no greater than 2" adds nothing to address the moderate limitations in concentration, persistence, and pace found by the ALJ. It may be that the ALJ intended to reference the Reasoning Level identified for each job, rather than the SVP. The SVP is the specific vocational preparation level required for a given position, and gauges "the amount of lapsed time it takes for a typical worker to learn the job's duties." In contrast, the Reasoning Level indicates "the minimal ability a worker needs to complete the job's tasks themselves." See <u>Hann v. Colvin</u>, No. 12-cv-06234-JCS, 2014 WL 1382063, at *16 n.9 (N.D. Cal. Mar. 28, 2014). In other words, "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the [Reasoning Level] ratings." <u>Hall–Grover v. Barnhart</u>, No. 03-239-P-C, 2004 WL 1529283, at *4 (D. Me. April 30, 2004). Accordingly, a limitation of SVP level does not explain whether Plaintiff could perform simple, routine, repetitive tasks in a low stress setting, let alone whether Plaintiff was or was not further limited in terms of concentration, persistence, or pace.

under sentence four of 42 U.S.C. § 405(g).  The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation.  To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #11] should be GRANTED.  However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 21st day of November, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge